IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEPHEN O. and BRIDGET M.,
individually and on behalf of J.O.,

                Plaintiffs,

    v.

SCHOOL DISTRICT OF PHILADELPHIA,

                Defendant.

CIVIL ACTION
NO. 20-1991

**OPINION**

Slomsky, J.                                                                 **March 31, 2021**

## I.   INTRODUCTION

On April 22, 2020, Plaintiffs Stephen O. and Bridget M. initiated this action against Defendant School District of Philadelphia to appeal part of a January 31, 2020 decision issued after a Pennsylvania Special Education Due Process Hearing. In their Complaint, Plaintiffs allege that Defendant failed to provide their son J.O. with a free appropriate public education ("FAPE"), in violation of the Individuals with Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and Title II of the Americans with Disabilities Act ("ADA"). For the Court to properly adjudicate this nonjury case, it is necessary to review the administrative record. On September 17, 2020, the 6,230-page administrative record was filed under seal. Before the Court now is a Motion to Supplement the Administrative Record under 20 U.S.C. § 1415(i)(2)(C)(ii) filed by Plaintiffs individually and on behalf of their child J.O. (Doc. No. 30.)

In the Motion, Plaintiffs seek to supplement the administrative record with (1) three exhibits that were barred from introduction at the Due Process Hearing, (2) an addendum to the

expert report prepared by Plaintiffs' expert, Dr. Felicia Hurewitz, with proposed testimony about its contents, and (3) the deposition transcript of Brianna Lomax, J.O.'s former school aide.  The parties dispute whether the proffered evidence is relevant, non-cumulative, and/or useful to the Court in determining whether Defendant provided J.O. with a FAPE.

For the reasons stated infra, Plaintiffs' Motion to Supplement the Administrative Record (Doc. No. 30) will be denied.

## II.    BACKGROUND

### A.    The Underlying Due Process Hearing

On May 13, 2019, Plaintiffs filed a special education Due Process complaint against Defendant School District of Philadelphia on the ground that Defendant "failed to provide J.O., a student with autism and other disabilities, with a free appropriate public education (FAPE)" while he attended Vare-Washington elementary school.  (Doc. No. 1 ¶¶ 2-3.)  Plaintiffs sought, inter alia, (1) a compensatory education from August 27, 2018 to May 6, 2019,[1] (2) reimbursement for services J.O. received in Summer 2019, and (3) reimbursement for J.O.'s private school tuition at Orchard Friends School plus transportation "beginning on May 7, 2019, or, in the alternative, a compensatory education fund . . . ."  (Id. ¶ 4.)

The eight-session Due Process Hearing commenced on July 24, 2019 and concluded on December 19, 2019.  (See Doc. No. 30 at 13.)  The parties introduced over 150 exhibits[2] and called 14 witnesses to testify during the eight sessions.  (See Doc. No. 13 at 2-3, 266, 366, 435, 468, 577, 696, 815, 893.)  On January 31, 2020, the presiding Hearing Officer issued his decision.  (See Doc.

---

[1]   This time period is when J.O. attended Vare-Washington and before Plaintiffs placed him in Orchard Friends School.  (See Doc. No. 1 ¶ 33.)

[2]   By the Court's calculation, the parties introduced a total of 171 exhibits at the Due Process Hearing.

No. 3-1.)  After reviewing "the large record of th[e] case in its entirety," the Hearing Officer found in favor of Plaintiffs for the reimbursement of J.O.'s Summer 2019 services and found in favor of Defendant on all other claims.  (Id. at 4, 36-37.)  Ultimately, the Hearing Officer held that the various Individualized Education Plans ("IEPs") Defendant implemented while J.O. attended Vare-Washington were "reasonably calculated to provide a FAPE" to J.O.  (Id. at 36.)

**B.      The Case Before this Court**

On April 22, 2020, Plaintiffs initiated the case before this Court.  (See Doc. No. 1.)  Seeking "to appeal those portions of the Hearing Officer's decision that found against [them]," Plaintiffs filed suit under the IDEA, Section 504, and the ADA on the ground that "[t]he Hearing Officer's failure to award compensatory education was based on several errors of law."  (Id. ¶¶ 1, 6, 47.)  On September 17, 2020, the 6,230-page administrative record was filed under seal.  (See Doc. No. 13.)

**1.      The Motion to Supplement the Administrative Record**

On January 27, 2021, Plaintiffs filed the Motion to Supplement the Administrative Record. (Doc. No. 30.)  In the Motion, Plaintiffs request that the following evidence be added to the administrative record pursuant to 20 U.S.C. § 1415(i)(2)(C)(ii):[3]

- The transcript from the November 12, 2020 deposition of Brianna Lomax . . . ;

- The December 24, 2020 Addendum to Report for J.O., prepared by Felicia Hurewitz, Ph.D./BCBA . . . ;

- [Plaintiffs'] Exhibit P-111, J.O.'s September 5, 2019 test results from the Kaufman Brief Intelligence Test ["KBIT"], Second Edition . . . ;

- [Plaintiffs'] Exhibit P-113, J.O.'s September/October 2019 Phonological Awareness Test ["PAT"] Results from the Orchard Friends School . . . ;

---

[3]     Under the IDEA, a district court reviewing a Due Process Hearing decision "shall hear additional evidence at the request of a party . . . ."  20 U.S.C. § 1415(i)(2)(C)(ii).

- [Plaintiffs'] Exhibit P-120, J.O.'s August 22, 2019 Occupational Therapy Assessment ["OTA"] . . . ; and

- Supplemental testimony of Dr. Felicia Hurewitz in open court to explain how the supplemental evidence in combination with the administrative record establishes that Defendant failed to provide J.O. a free and appropriate public education.

(Id. at 3.)

Plaintiffs state that the three proffered exhibits "became available to [them] at different times between August and October 2019, and [Plaintiffs] provided copies to [Defendant] in October 2019." (Id. at 13.) "During the last hearing date in December 2019, [Plaintiffs] sought to introduce those independent test results, but the hearing officer barred them from evidence" because "they had not been disclosed five days before the first hearing date in July" in accordance with the IDEA five-day disclosure rule.[4] (Id. at 14.) Plaintiffs claim the Hearing Officer "also stated that he lacked the authority to admit two of th[e] exhibits." (Id.) They now seek to supplement the record with these three exhibits, arguing that "[e]ach of the previously proffered exhibits supports [Plaintiffs'] case and adds valuable information by demonstrating J.O.'s abilities and needs." (Id. at 28-29.)

First, Plaintiffs argue that the September 5, 2019 Kaufman Brief Intelligence Test ("KBIT") results are "key to assessing whether [Defendant's] program was suitable given [J.O.'s] needs."

---

[4] "Not less than 5 business days prior to a hearing . . . each party shall disclose to all other parties all evaluations completed by that date, and recommendations based on the offering party's evaluations, that the party intends to use at the hearing." 20 U.S.C. § 1415(f)(2)(A); see also 34 C.F.R. § 300.512(b)(1) ("At least five business days prior to a hearing conducted pursuant to § 300.511(a), each party must disclose to all other parties all evaluations completed by that date and recommendations based on the offering party's evaluations that the party intends to use at the hearing."); Office for Dispute Resolution, Pa. Special Educ. Dispute Resolution Manual § 709.A (2017), https://odr-pa.org/wp-content/uploads/Dispute-Resolution-Manual.pdf ("At least five business days prior to the due process hearing, each party must disclose to the other party all evidence, such as witnesses and exhibits including without limitation evaluations and recommendations based on them, that the party intends to introduce at the hearing.").

(Id. at 29.)  While Defendant had previously conducted "an abbreviated intelligence assessment in May 2017" that suggested J.O. had "below average intelligence," Plaintiffs contend the KBIT shows J.O. "had average intelligence during his first-grade year at Vare-Washington."   (Id.)  According to Plaintiffs, this "lends credence to [their] argument that [J.O.'s] failure to make progress in the District was due to [Defendant's] failure to accommodate his needs, not J.O.'s innate inability."  (Id.)

Second, Plaintiffs argue that the September/October 2019 Phonological Awareness Test ("PAT") results "explain why J.O. struggled to read during his time in the District."  (Id.)  "While earlier phonological testing from 2014 and 2015 is in the record, the 2019 results show that J.O.'s needs persisted over time, supporting a diagnosis of developmental dyslexia. . . . a diagnosis that would dictate the type of educational program that J.O. needed . . . ."[5]  (Id. at 29-30.)  Therefore, they aver that the PAT "show[s] an additional way that [Defendant] failed J.O.—they failed to program for his phonological processing needs . . . and thus failed to provide necessary instruction in reading."  (Id. at 30.)

Third, Plaintiffs argue that the August 22, 2019 Occupational Therapy Assessment ("OTA") shows J.O. "was struggling with sensory modulation . . . ."  (Id.)  "While the District provided some occupational therapy supports for J.O.," Plaintiffs believe that the OTA "provides additional—but not redundant—information about J.O.'s needs over time and whether [Defendant's] program was sufficient."  (Id.)

Regarding the supplemental evidence from Plaintiffs' expert Dr. Felicia Hurewitz, Plaintiffs seek to supplement the administrative record with an addendum to Dr. Hurewitz's earlier

---

[5]   Plaintiffs note that "whether J.O. had dyslexia . . . was one of the disputes between [Plaintiffs] and [Defendant] at the due process hearing."  (Doc. No. 30 at 30.)

expert report along with testimony by Dr. Hurewitz in open court to further elaborate on the addendum.  (See id. at 3.)  Plaintiffs explain that "Dr. Hurewitz's earlier expert report drew on direct observations of J.O.'s educational program to assess whether [Defendant] was meeting his needs," and the addendum "examines how the information disclosed by Ms. Lomax and J.O.'s recent testing affects her previous conclusions." (Id. at 31.)  The new information from Ms. Lomax coupled with J.O.'s testing "supports her opinion that [Defendant] denied J.O. a FAPE," which Plaintiffs believe will help the Court "understand how this new information relates to previously admitted evidence." (Id.)

Finally, regarding the proffered deposition transcript of J.O.'s former school aide Brianna Lomax, Plaintiffs assert that Ms. Lomax was an "untrained aide" who had "primary responsibility for [J.O.'s] education." (Id. at 5.)  Rather than "afford a team of teachers, aides, and other professionals to create and implement an [IEP] for [J.O.]," they assert that Defendant instead "dumped responsibility for his learning needs onto his one-on-one aide, Ms. Lomax." (Id. at 8.) They seek to supplement the administrative record with a transcript of her deposition "because it reveals how [Defendant] placed the weight of responsibility for J.O.'s education on someone who lacked the training and skill to play that role." (Id. at 23.)

Plaintiffs point to several excerpts in Ms. Lomax's deposition they believe are "essential for understanding J.O.'s educational programming at Vare-Washington" elementary school, further noting that Ms. Lomax's testimony stands in sharp contrast to the testimony elicited at the Due Process Hearing from J.O.'s assigned special education teacher, Christine Ryan. (Id. at 19, 22.) Ms. Ryan testified that "her role was to provide J.O. with specially designed instruction in the classroom, provide behavior supports, and work closely with Ms. Lomax," while Ms. Lomax's role was "to continue to monitor [his] behavior and provide, . . . as needed accommodations and

modifications to follow the support plan . . . but she's . . . not expected to be a teacher and teach." (Id. at 22) (footnotes omitted).  According to Ms. Lomax, however, "her job required her to provide direct instruction to J.O.," and "[s]he was surprised to learn that Ms. Ryan testified otherwise." (Id.)  Because of this contradiction, Plaintiffs contend that Ms. Lomax's deposition testimony reveals "the whole story about J.O.'s program" and will help the Court "judge if that program was appropriate for his needs . . . ."  (Id. at 23.)

Ms. Lomax did not testify at the Due Process Hearing, and Plaintiffs claim they "had sound reasons for waiting to introduce her testimony[.]"  (Id. at 19.)  They allege that Ms. Lomax was disciplined "for communicating with [them] about J.O.," and they were "worried that calling her to testify would lead to further retaliation."  (Id. at 24.)  Plaintiffs also state they "had no reason to know the extent to which Ms. Lomax—[Defendant's] own employee—would contradict almost the entirety of the testimony given by the other District witnesses about J.O.'s program."  (Id.) Lastly, given that the Due Process Hearing "dragged on for eight sessions over six months," Plaintiffs "sought to avoid consuming additional time and taxing the tribunal's resources by calling yet another witness, particularly when they had no reason to know the extent of Ms. Lomax's contrary story."  (Id. at 25.)

## 2.      Defendant's Response in Opposition to the Instant Motion

On February 10, 2021, Defendant filed a Response in Opposition to the instant Motion, in which it asks the Court to deny Plaintiffs' Motion to supplement the "already voluminous record— comprised of nearly 200 separate exhibits and testimony from 14 witnesses" because "all of the evidence they seek to admit is irrelevant, cumulative, and/or not useful to this Court's review of the Hearing Officer's decision."  (Doc. No. 31 at 5-6.)

Regarding the three exhibits, P-111, P-113, and P-120, Defendant contends that "the Hearing Officer correctly determined that they were neither relevant nor useful in his evaluation

of J.O.'s educational program in the District." (Id. at 6.) "Although Plaintiffs attempt to frame the Hearing Officer's decision not to admit" the KBIT into evidence "due to a 'misunderstanding of his authority' under the IDEA and/or a misapplication of the five-day rule," Defendant contends "this argument mischaracterizes the actual reason the Hearing Officer declined to admit the KBIT results into evidence: its lack of probative value to the Hearing Officer." (Id. at 8.) Defendant notes that "the Hearing Officer specifically gave Hurewitz leeway to testify about the substance of [the KBIT], and, in fact, allowed her testimony into evidence," but "ultimately decided to bar the document's admission into evidence" because Dr. Hurewitz "did not offer any extensive testimony about the information contained within it[.]" (Id.)

Next, Defendant argues that the Hearing Officer barred the PAT as inadmissible evidence because speech pathologist Shannon Pearl, "the witness who had created the document[,] had already testified and given her opinion about J.O.'s needs almost two months prior, independent of any information contained in this document." (Id. at 10-11.) Further, "the information contained within [the PAT] is cumulative of other information in the record about J.O.'s needs and abilities," and "Plaintiffs even acknowledge that 'earlier phonological testing from 2014 and 2015 is in the record.'" (Id. at 12.) As for the OTA, Defendant states it is "'cumulative' to other evidence already in the record regarding J.O.'s needs" and, similar to the KBIT, "the Hearing Officer ultimately decided to . . . exclud[e] the document as evidence, but pointedly [did] not exclud[e] Hurewitz's testimony about it." (Id. at 14.)

Regarding the supplemental evidence from Dr. Hurewitz, Defendant warns that "[a]llowing Hurewitz's addendum report into evidence, which merely embellishes her prior testimony from the due process hearing and her prior report's observations of J.O.," would improperly "change the character of the hearing from one of review to a trial de novo." (Id. at 23.) Because Dr.

Hurewitz's addendum "provides her personal opinions based on Lomax's deposition testimony, the KBIT results, and the [PAT] results—none of which are in the record— to bolster the opinions she espoused in her original report," Defendant opposes supplementing the administrative record with her addendum and "prospective testimony." (Id. at 26.)

Regarding Ms. Lomax's deposition testimony, Defendant submits that the transcript is "cumulative evidence that merely echoes other testimonial and documentary evidence that Plaintiffs introduced into the already-voluminous record during the due process proceeding." (Id. at 15.) "[T]hough Plaintiffs ultimately chose not to call her as a witness in the due process proceeding," Defendant notes that Plaintiffs "discussed Lomax's role in J.O.'s education at great length"—she was referenced "at least 122 times across the eight days of testimony." (Id.) (emphasis omitted).

Though Plaintiffs argue that her deposition testimony "is necessary because '[s]he testified that she had the primary responsibility for J.O.'s education[,]'" Defendant counters this argument by noting that "this issue was already explored during the due process proceeding" through "Plaintiff Bridget M.'s testimony, and the testimony of other witnesses[.]" (Id. at 17.) And insofar as Plaintiffs "intend to use Lomax's testimony . . . in an effort to attack the credibility of [Ms.] Ryan," Defendant contends it "would be wholly improper under the law and prejudicial to the [school] District" since "the Hearing Officer found that 'all witnesses testified credibly[,]' . . . . the Court has not had an opportunity to hear any of those witnesses, and none of those witnesses have had an opportunity to directly rebut Ms. Lomax's statements[.]" (Id. at 19-20.)

### 3.    Plaintiffs' Reply

On February 17, 2021 Plaintiffs filed a Reply, in which they summarily state the following:

[Defendant] argues that Ms. Lomax's testimony is cumulative. It is not—her testimony contradicts the testimony of several critical District witnesses.

[Defendant] claims that Dr. Hurewitz's testimony would convert these proceedings into a trial <u>de novo</u>.  It will not—she is merely one witness.

[Defendant] contends that the Hearing Officer weighed the probative value of [Plaintiffs'] exhibits in excluding them.  He did not—he precluded them because he misread the IDEA.

(Doc No. 32 at 3.)  Plaintiffs maintain that their proffered "additions to the record are important, but minimal in scope."  (<u>Id.</u> at 1.)

To the extent that Defendant claims "it will suffer prejudice if the record is supplemented," Plaintiffs state "it is of [Defendant's] own making."  (<u>Id.</u> at 2.)  Defendant "fail[ed] to avail itself of the curative opportunities that this Court afford[ed]" when it "gave [Defendant] opportunities to prepare a rebuttal expert report and file its own motion to supplement the administrative record[.]"  (<u>Id.</u> at 2-3.)  Nevertheless, Plaintiffs note that "the Court must still weigh that purported prejudice against J.O.'s right to have this Court consider evidence showing his needs."  (<u>Id.</u> at 3.)  They believe "[t]he scale clearly tips in J.O.'s favor."  (<u>Id.</u>)

## III.   STANDARD OF REVIEW

A district court reviewing a Due Process Hearing decision pursuant to the IDEA "shall hear additional evidence at the request of a party . . . ."  20 U.S.C. § 1415(i)(2)(C)(ii).  Under Third Circuit precedent, district courts have discretion to determine "what additional evidence to admit in an IDEA judicial review proceeding" and must "evaluate a party's proffered evidence before deciding to exclude it.  <u>Susan N. v. Wilson Sch. Dist.</u>, 70 F.3d 751, 759-60 (3d Cir. 1995).  When evaluating the proffered evidence, the central question is whether the evidence is "'relevant, non-cumulative and useful' in determining whether a child's program is in compliance with the IDEA." <u>M.C. by & through Conyers v. Sch. Dist. of Philadelphia</u>, 393 F. Supp. 3d 412, 415 (E.D. Pa. 2019) (quoting <u>Susan N.</u>, 70 F.3d at 760); <u>see also</u> <u>L.G. ex rel. E.G. v. Fair Lawn Bd. of Educ.</u>, 486 F. App'x 967, 975 (3d Cir. 2012).

Courts "should not automatically disallow testimony from all who did, or could have, testified before the administrative hearing, but . . . need not consider evidence that is irrelevant or cumulative." D.K. v. Abington Sch. Dist., 696 F.3d 233, 253 (3d Cir. 2012) (citations and internal quotations omitted).   Factors courts consider when deciding whether to allow supplemental evidence are: "(1) whether a procedural bar prevented the introduction of the evidence at the administrative level; (2) whether the evidence was deliberately withheld for strategic reasons; (3) whether the introduction of the evidence at the district court level would be prejudicial to the other party; and (4) the potential impact on the administration of justice." Jaffess v. Council Rock Sch. Dist., No. 06-0143, 2006 WL 3097939, at *3 (E.D. Pa. Oct. 26, 2006) (citing F.D. v. Holland Twp. Bd. of Educ., No. 05-5237, 2006 WL 2482574, at *3 (D.N.J. Aug. 25, 2006)).

## IV.   ANALYSIS

As previously noted, Plaintiffs ask the Court to supplement the administrative record with the following evidence:

- The transcript from the November 12, 2020 deposition of Brianna Lomax . . . ;

- The December 24, 2020 Addendum to Report for J.O., prepared by Felicia Hurewitz, Ph.D./BCBA . . . ;

- [Plaintiffs'] Exhibit P-111, J.O.'s September 5, 2019 test results from the Kaufman Brief Intelligence Test ["KBIT"], Second Edition . . . ;

- [Plaintiffs'] Exhibit P-113, J.O.'s September/October 2019 Phonological Awareness Test ["PAT"] Results from the Orchard Friends School . . . ;

- [Plaintiffs'] Exhibit P-120, J.O.'s August 22, 2019 Occupational Therapy Assessment ["OTA"] . . . ; and

- Supplemental testimony of Dr. Felicia Hurewitz in open court to explain how the supplemental evidence in combination with the administrative record establishes that Defendant failed to provide J.O. a [FAPE].

(Doc. No. 30 at 3.)  This proffered evidence falls into three categories: (1) exhibits barred from the Due Process Hearing, (2) supplemental evidence from Plaintiffs' expert, Dr. Felicia Hurewitz, and (3) the deposition transcript of J.O.'s former school aide, Brianna Lomax.  Each category will be discussed in turn.

### A.      Exhibits Barred from the Due Process Hearing

The first category of proffered evidence consists of three exhibits that were barred from introduction at the Due Process Hearing: (1) Exhibit P-111, J.O.'s September 5, 2019 Kaufman Brief Intelligence Test ("KBIT") results, (2) Exhibit P-113, J.O.'s September/October 2019 Phonological Awareness Test ("PAT") results from Orchard Friends School, and (3) Exhibit P-120, J.O.'s August 22, 2019 Occupational Therapy Assessment ("OTA").  (See Doc. No. 30 at 14.)

### 1.      The September 5, 2019 KBIT Results

First, Plaintiffs argue that the Hearing Officer improperly barred the KBIT results "because he either misunderstood his authority to admit [it], misapplied the five-day rule, or committed both errors."  (Id. at 25.)  They sought to introduce the KBIT at the Due Process Hearing to show that J.O. "had average intelligence, which would help to show that his lack of progress in school was due to [Defendant's] failures, not J.O.'s lack of innate ability."  (Id. at 26.)  According to Plaintiffs, however, "[t]he hearing officer barred th[e] report[] after opining that he had no authority to consider [it] because no authenticating witnesses testified about [its] contents."  (Id.)

In their Response in Opposition, Defendant asserts that "the Hearing Officer determined that because the document was a results sheet of J.O.'s scores on the KBIT, without hearing testimony about the meaning of those results, it was not 'something that [he could] interpret and use for purposes of factfinding.'"  (Doc. No. 31 at 7) (alteration in original) (quoting Doc. No. 13, Ex. 6 at 1418:16-17.)  Rather than exclude the document at that time, "the Hearing Officer reserved judgment on the admission of the document, 'until [Dr. Hurewitz] testifi[ed] about the document.'"

(Id.) (second alteration in original) (quoting Doc. No. 13, Ex. 6 at 1419:1-2.)  The Hearing Officer "ultimately decided to bar the document's admission into evidence" after finding that Dr. Hurewitz "did not offer any extensive testimony about the information contained within" the KBIT.  (Id. at 8.)

        "A district court may consider 'additional' evidence if it was improperly rejected at the administrative level," Jaffess, 2006 WL 3097939, at *4, but "need not consider evidence that is irrelevant or cumulative[.]"  D.K., 696 F.3d at 253.  While the KBIT is relevant, it is cumulative evidence.  As Defendant points out, upon objection to the KBIT's introduction into evidence, the Hearing Officer reserved judgment on its admission until he heard Dr. Hurewitz's testimony:

> [HEARING OFFICER]:  In the absence of testimony about this document, I do not believe that this -- that that -- it is something that I can interpret and use for purposes of factfinding.
>
> [PLAINTIFFS' COUNSEL]:  There will be testimony on it.
>
> HEARING OFFICER:  So, what I am doing now is, I have permitted the testimony from the witness to say that she used it in part to form her opinions.  I am not making it part of the record now.  Counsel, I am holding your objection until the witness testifies about the document, first to see if she does.  And at that point, will be in a better position for me to determine whether or not this document is admissible.

(Doc. No. 13, Ex. 6 at 1418:14-1419:5.)  When Plaintiffs brought the KBIT to Dr. Hurewitz's attention, the following exchange occurred:

> HEARING OFFICER:  I believe that [the KBIT] was another document [Defendant] objected to.  Ma'am, when did you first see this document?
>
> [DR. HUREWITZ]: . . . . Oh, in October.
>
> HEARING OFFICER:  And how did you use this document?
>
> [DR. HUREWITZ]:  I used it to confirm what I already suspected, which is that [J.O.] is brighter than perhaps he's given credit for.
>
> HEARING OFFICER:  I'm sustaining [Defendant's] objection, excluding the document.  I understand that the document, in part, forms the basis of the witness'

opinion testimony.  I am not excluding her testimony that it was used to form that opinion.  I am excluding the document itself as evidence.

(Id. at 1464:11-1465:5.)

Plaintiffs seek to supplement the administrative record with the KBIT because it shows J.O. "had average intelligence," contrary to a previously administered test by Defendant which "suggested below average intelligence[.]"  (Doc. No. 30 at 29.)  But as shown above, Dr. Hurewitz made the same contention during her testimony—the KBIT "confirm[ed] what [she] already suspected, which is that [J.O.] is brighter than perhaps he's given credit for."  (Doc. No. 13, Ex. 6 at 1464:21-22.)  Evidence that merely bolsters part of the administrative record is cumulative evidence.  See L.G. v. Fair Lawn Bd. of Educ., No. 2:09-6456, 2011 WL 2559547, at *6 (D.N.J. June 27, 2011).  Therefore, Plaintiffs' Motion to Supplement the Administrative Record will be denied as to the KBIT.[6]

### 2.     The September/October 2019 PAT Results

Second, Plaintiffs argue that the Hearing Officer improperly barred the PAT results on the ground that Plaintiffs "produced [it] too late under the IDEA's five-day disclosure rule."  (Doc. No. 30 at 27.)  "While earlier phonological testing from 2014 and 2015 is in the record," they aver that the Court should allow them to supplement the administrative record with the PAT because "the 2019 results show that J.O.'s needs persisted over time, supporting a diagnosis of developmental dyslexia. . . . a diagnosis that would dictate the type of educational program that J.O. needed."  (Id. at 29-30) (footnote omitted).  "The test results thus show an additional way that [Defendant] failed J.O.—they failed to program for his phonological processing needs, which were

---

[6]    Because the KBIT is cumulative evidence, the Court need not address whether the Hearing Officer improperly barred its introduction based on a misapplication of the IDEA five-day disclosure rule.

present throughout his time in the District, and thus failed to provide necessary instruction in reading." (Id. at 30.)

Defendant contends that the PAT should not be added to the administrative record because "the information contained within [the PAT] is cumulative of other information in the record about J.O.'s needs and abilities," such as the "'earlier phonological testing from 2014 and 2015 . . . .'" (Doc. No. 31 at 12.)   Additionally, Defendant notes that Orchard Friends School's speech pathologist, Shannon Pearl, "created the document [and] had already testified and given her opinion about J.O.'s needs almost two months prior, independent of any information contained in this document." (Id. at 10-11.)  "[B]y deciding to call Pearl as a witness before she had completed the phonological testing of J.O., Plaintiffs made a calculated decision not to have her testify about the testing and her forthcoming report—to [Defendant's] detriment." (Id. at 11.)

District courts should not "turn a blind eye in exercising their 'particularized discretion,' if the record suggests a strategic manipulation of the hearing process." M.C., 393 F. Supp. 3d at 418; see also Antoine M. v. Chester Upland Sch. Dist., 420 F. Supp. 2d 396, 403 (E.D. Pa. 2006) (quoting Roland M. v. Concord Sch. Comm., 910 F.2d 983, 998 (1st Cir. 1990)) ("[T]he court should ensure that the party is not attempting to 'leapfrog the agency proceedings.'")   Even so, notwithstanding the timing of Ms. Pearl's testimony and the PAT's introduction, the PAT is cumulative of other evidence in the administrative record.  When asked about J.O.'s phonological processing skills at the Hearing, Dr. Hurewitz provided in-depth testimony regarding J.O.'s phonological processing deficits:

> [PLAINTIFFS' COUNSEL]:  Can you tell us about [J.O.'s] learning disability in reading and writing?
>
> [DR. HUREWITZ]:  So, he has difficulty with phonological processing, meaning that he has difficulty parsing up the sounds in language in order to figure out how

to encode or spell those sounds. He has trouble if you said a single word differentiating the component sounds and sequencing the component sounds.

He also has difficulty in the other direction where he would have to look at text and turn that into a sound for a spoken word. So, decoding, he has difficulty with that process of blending those phonemes, and categorizing those phonemes. Those are the sound categories that I discussed earlier.

. . . .

So, because . . . his phonological processing doesn't work the way it's expected to when hearing words and when even self-talking words, it doesn't work the way it works for other children.

(Doc. No. 13, Ex. 6 at 1431:12-1432:2, 1440:8-13.) Dr. Hurewitz then stated that the PAT, among

other documents, confirmed her beliefs regarding J.O.'s phonological processing troubles:

[PLAINTIFFS' COUNSEL]: And what makes you say that he has a phonological processing disorder?

[DR. HUREWITZ]: So, I base that on my testing of him, of my observations of him, and also, in the observations at Orchard Friends School and discussions with the Orchard Friends staff and the Orchard Friends testing where they confirmed my suspicions with the CTOPP, which is a test of phonological processing.[7]

 (Id., Ex. 6 at 1432:10-18) (emphasis added).

Later in the Hearing, Dr. Hurewitz testified that she believed J.O. was dyslexic and

Defendant's staff were not adequately trained to teach a child with dyslexia:

[PLAINTIFFS' COUNSEL]: Based on your observation, review of the records, do you believe that the District staff were trained in the approach or methodology that [J.O.] needed to learn?

[DR. HUREWITZ]: No, they didn't show any knowledge of how to teach reading to someone with dyslexia.

(Id. at 1497:19-25.) Likewise, Elizabeth Diperna, the head of Orchard Friends School, and Ms.

Pearl both testified that they believe J.O. is dyslexic:

---

[7]    The PAT shows J.O.'s Comprehensive Test of Phonological Processing ("CTOPP") test results. (See Doc. No. 30-1, Ex. D.)

[PLAINTIFFS' COUNSEL]:  Does Orchard Friends believe whether [J.O.] has dyslexia?

[MS. DIPERNA]:  We believe that he does.

. . . .

[PLAINTIFFS' COUNSEL]:  Does the Orchard Friends School suspect that [J.O.] has dyslexia?

[MS. PEARL]:  Yes.

(Id., Ex. 11 at 232:5-7, 366:6-8.)  Finally, Plaintiffs' counsel discussed J.O.'s suspected dyslexia in their opening argument at the Due Process Hearing,[8] and definitively stated that J.O. was dyslexic in their closing brief.[9]

In light of the above evidence, it is clear that the Hearing Officer heard and considered various forms of evidence at the Due Process Hearing regarding J.O.'s phonological processing and suspected dyslexia.[10]  Therefore, the PAT results "are cumulative of other [evidence] adduced at the due process hearing," Sch. Dist. of Philadelphia v. Post, No. 15-4501, 2017 WL 3676970, at

---

[8]   "Outside experts and instructors knowledgeable with dyslexia have easily identified [J.O.] as exhibiting symptoms of dyslexia, while the school district's school psychologist failed to test [J.O.] because he was exhibiting too many problem behaviors."  (Doc. No. 13, Ex. 13 at 9:19-25.)

[9]   "[W]ith [J.O.]—a child with autism, dyslexia, and anxiety—[Defendant] . . . neither siz[ed] up his unique needs nor develop[ed] a program to meet them."  (Doc. No. 13, Ex. 4 at 1.)  "[J.O.] has a complex profile—he has high-functioning autism with severe anxiety; he is blind in one eye; and he has dyslexia . . . . Because of his dyslexia and writing difficulties, [J.O.] needs a systematic, sequential approach in reading and writing . . . throughout the day."  (Id. at 3.)

[10]   See J.N. v. S. W. Sch. Dist., 55 F. Supp. 3d 589, 597 (M.D. Pa. 2014) (explaining that the proffered supplemental evidence is cumulative because "[t]he information contained in proposed Exhibit . . . is largely summarized by th[e] testimony" elicited at the Due Process Hearing).

*8 (E.D. Pa. Aug. 23, 2017), and Plaintiffs' Motion to Supplement the Administrative Record will be denied as to the PAT.[11]

### 3.    The August 22, 2019 OTA

Third, Plaintiffs argue that the Hearing Officer improperly barred the OTA "after opining that he had no authority to consider [it] because no authenticating witnesses testified about [its] contents."  (Doc. No. 30 at 26.)  They also note that the OTA shows "J.O. was struggling with sensory modulation and thus requires occupational therapy as an IDEA related service to address those needs."  (Id. at 30) (footnote omitted).  While they concede that Defendant "provided some occupational therapy supports for J.O.," they contend that "the persistence of his physical sensorimotor deficits to the time shortly after he left the District suggests [Defendant's] services were inadequate to address J.O.'s needs."  (Id.)  As such, Plaintiffs seek to supplement the administrative record with the OTA because "[i]t provides additional—but not redundant— information about J.O.'s needs over time and whether the District's program was sufficient."  (Id.)

In the Response in Opposition, Defendant notes that "the Hearing Officer ultimately decided to . . . exclud[e] the [OTA] as evidence, but pointedly [did] not exclud[e] Hurewitz's testimony about it."  (Doc. No. 31 at 14.)  "As the evidence in the [OTA] is—in Hurewitz's own words—'cumulative' to other evidence already in the record regarding J.O.'s needs, there is no reason for this Court to supplement the record with it now[.]"  (Id.)

Similar to the KBIT and PAT, the OTA is cumulative evidence.  When Defendant objected to the OTA's introduction into evidence, the Hearing Officer stated he would not rule on the objection at that time:

---

[11]    As in note 6, supra, because the PAT is cumulative evidence, the Court need not address whether the Hearing Officer improperly barred it based on a misapplication of the IDEA five-day disclosure rule.

> [HEARING OFFICER]:  [B]ecause this is -- this comes from an evaluator who has
> not testified in this due process hearing from an organization that has not been
> represented in this due process hearing for a witness . . . . I am not moving it into
> the record now.  If the witness testifies to this document, I will consider --
> reconsider [Defendant's] objection at that time.

(Doc. No. 13, Ex. 6 at 1423:1-10.)  And as Defendant points out, when asked about the OTA, Dr.

Hurewitz stated it was cumulative and additional evidence she reviewed prior to the Hearing:

> HEARING OFFICER:  Ma'am, when did you first see this document?
>
> [DR. HUREWITZ]:  It was in the binders that I reviewed -- it was in the binders
> that I reviewed, I believe, after my report was issued.  So, in the binders that I
> reviewed either before or after I was supposed to testify the first time.
>
> . . . .
>
> HEARING OFFICER: Did your review of this document inform your opinion of
> the student in a way that is not reflected in your report?
>
> [DR. HUREWITZ]:  Subsequent to my report, I had a further understanding of the
> level of his fine motor deficits, which I believe are impacting his writing ability.
> So, to that extent, it informed it . . . . There was discussion of how his coordination
> effects his learning.  So, that was cumulative with it.  My discussions with Orchard
> Friends School and how he was functioning in that school informed it. . . . So, this
> was additional, but it was helpful because they did formal tests.

(Id., Ex. 6 at 1436:1-1437:11.)

Dr. Hurewitz's testimony confirms the OTA is cumulative evidence.  The Hearing Officer

heard and considered Dr. Hurewitz's expert testimony and expert report, which are both in the

administrative record.  The OTA gave Dr. Hurewitz a further understanding of J.O. deficits, but it

did not inform her opinion in a way that was not already reflected in her expert report.  Therefore,

Plaintiffs' Motion to Supplement the Administrative Record will be denied as to the OTA.

**B.**     **Supplemental Evidence from Dr. Felicia Hurewitz**

The next category of proffered evidence consists of a December 24, 2020 addendum to the

expert report by Dr. Felicia Hurewitz and a "request that Dr. Hurewitz be permitted to testify at a

hearing about the contents of her supplemental report."  (Doc. No. 30 at 32.)

In the instant Motion, Plaintiffs contend that the addendum should be added to the administrative record "because it is relevant to the ultimate determination that the Court needs to make: whether the District denied J.O. a FAPE." (Id. at 31.)  While "Dr. Hurewitz's earlier expert report drew on direct observations of J.O.'s educational program to assess whether [Defendant] was meeting his needs," Plaintiffs believe that the information contained in the addendum "affects her previous conclusions."  (Id.)  Specifically, "[h]er addendum expert report interprets the information disclosed by Ms. Lomax and J.O.'s recent testing, showing how that new information supports her opinion that [Defendant] denied J.O. a FAPE." (Id.)  Plaintiffs also ask the Court to afford Dr. Hurewitz an opportunity to testify about the addendum because it "will allow the parties to probe the bases for her conclusions about J.O.'s needs in school and the inadequacy of [Defendant's] program." (Id. at 32-33.)

Defendant disputes these contentions, arguing that the Court should not add the addendum to the administrative record because "the information contained therein is irrelevant, cumulative, and unhelpful and is an improper embellishment of [Dr. Hurewitz's] prior testimony." (Doc. No. 31 at 24.)  Defendant claims it is inappropriate for an expert "to posit legal conclusions about whether the District denied J.O. a FAPE" based on "what she remembers from her observations of J.O.'s classroom" and "her review of a fact witness' deposition transcript." (Id.)  At bottom, Defendant contends that the addendum improperly "provides her personal opinions based on Lomax's deposition testimony, the KBIT results, and the [PAT] results—none of which are in the record—to bolster the opinions she espoused in her original report and during her testimony in the due process proceeding," pointing to D.K. v. Abington Sch. Dist. and J.N. v. S. W. Sch. Dist., 55 F. Supp. 3d 589 (M.D. Pa. 2014) in support of its position.  (Id. at 26.)

In <u>D.K.</u>, the Third Circuit Court of Appeals affirmed a district court's declination to supplement an administrative record with an expert report, finding that the report was "largely duplicative of the evidence given at the administrative hearings."  696 F.3d at 253.  The Third Circuit explained that "[s]ix of the report's nine pages . . . were already introduced as exhibits and discussed by witnesses before the hearing officer," and the "report offer[ed] only a commentary, prepared with the benefit of hindsight, regarding the evidence and testimony already presented to the state agency."  <u>Id.</u>  In <u>J.N.</u>, the district court denied a motion to supplement the administrative record with a "two-page 'supplemental report'" because it was "largely duplicative" of information already contained in the administrative record.  55 F. Supp. 3d at 595.  The court also found the expert's "positions on FAPE [were] well-documented on the existing record" and the supplemental report "merely embellishe[d] [her] prior expert reports and testimony."  <u>Id.</u> at 596.

Similar to <u>D.K.</u> and <u>J.N.</u>, a review of Dr. Hurewitz's addendum shows it is cumulative of her earlier expert report and her testimony at the Due Process Hearing.  Three pages of the addendum summarize Dr. Hurewitz's credentials, education, and previous classroom observations and findings,[12] all of which were included in her earlier report and/or were elicited through her testimony at the Hearing.[13]  Another section discusses how the KBIT and PAT confirm her belief that J.O. has dyslexia;[14] and as noted in Sections IV.A.1 and 2, <u>supra</u>, Dr. Hurewitz relied upon the KBIT and PAT to form the basis of her opinion testimony at the Hearing.[15]  The remainder of the

---

[12]  (<u>See</u> Doc. No. 30-1, Ex. B at 1-4.)

[13]  (<u>See</u> Doc. Nos. 13, Ex. 6 at 1392:18-1401:10, 1493:22-1507:16; 13-15, Ex. 15-3 at 2-11, 21-29.)

[14]  (<u>See</u> Doc. No. 30-1, Ex. B at 5-6.)

[15]  (<u>See</u> Doc. No. 13, Ex. 6 at 1432:10-18, 1464:11-1465:5.)

addendum largely discusses how Brianna Lomax's deposition testimony—which is not currently part of the administrative record—either confirms or contradicts Dr. Hurewitz's classroom observations of J.O.[16]

Most importantly, Dr. Hurewitz states on the first and last pages of the addendum that the additional information "confirms [her] earlier impression" and "[she] continue[s] to find that [J.O.] was not offered [a FAPE] by [Defendant]." (Doc. No. 30-1, Ex. B at 1, 10.) The Hearing Officer heard and considered the same opinion at the Hearing:

> [PLAINTIFFS' COUNSEL]: So, based on your testing, record review, meeting with the [Plaintiffs], observations, consultations with service providers in the private school and your ongoing consultation with the family and the private school, do you have an opinion regarding whether the School District of Philadelphia has provided [J.O.] with an appropriate education?
>
> [DR. HUREWITZ]: Yes.
>
> [PLAINTIFFS' COUNSEL]: And what is that opinion?
>
> [DR. HUREWITZ]: It did not.

(Doc. No. 13, Ex. 6 at 1426:22-1427:7.)

Because the addendum "merely repeats or embellishes matters already adequately established of record in the administrative proceedings," Robert B. ex rel. Bruce B. v. W. Chester Area Sch. Dist., No. 04-2069, 2005 WL 2396968, at *10 (E.D. Pa. Sept. 27, 2005), it is cumulative evidence.[17] As the Third Circuit stated in D.K., the addendum "offers only a commentary,

---

[16]   (See Doc. No. 30-1, Ex. B at 4-10.)

[17]   See also A. H. by & through K. P. v. Colonial Sch. Dist., 779 F. App'x 90, 93 (3d Cir. 2019) ("[T]he report was cumulative of Dr. Schmidt's testimony before the Hearing Panel and would bolster that testimony by elaborating upon it."); J.N., 55 F. Supp. 3d at 596 ("After evaluating Dr. Kay's supplemental report, the court concludes that proposed Exhibit A is cumulative of the administrative record and merely embellishes Dr. Kay's prior expert reports and testimony.").

prepared with the benefit of hindsight, regarding the evidence and testimony already presented to the state agency." D.K., 696 F.3d at 253.  Allowing Plaintiffs to supplement the administrative record with evidence that "support[s] the same substantive claims previously reviewed . . . at administrative proceedings below" would place Defendant at risk of being unfairly prejudiced. D.K. v. Abington Sch. Dist., No. 08-4914, 2010 WL 1223596, at *11 (E.D. Pa. Mar. 25, 2010), aff'd, 696 F.3d 233 (3d Cir. 2012).  Therefore, Plaintiffs' Motion to Supplement the Administrative Record will be denied as to Dr. Hurewitz's addendum report and proposed testimony on the addendum.[18]

### C.   The November 12, 2020 Deposition Transcript of Brianna Lomax

The final item of proffered evidence is a deposition transcript of Brianna Lomax, J.O.'s former school aide.  In the instant Motion, Plaintiffs note that they "did not call Ms. Lomax during the hearing for logical reasons."  (Doc. No. 30 at 6 n.2.)  Specifically, they claim that Defendant "disciplined Ms. Lomax for communicating with [them] about J.O.," which led them to "worr[y] that calling her to testify would lead to further retaliation."  (Id. at 24.)  Plaintiffs also "justifiably sought to avoid consuming additional time and taxing the tribunal's resources by calling yet another witness," since the Hearing "dragged on for eight sessions over six months."  (Id. at 25.)

Plaintiffs now seek to supplement the administrative record with Ms. Lomax's November 12, 2020 deposition testimony, explaining that they reluctantly chose to depose her "as a last resort after going through a grueling administrative process."  (Id.)  "[W]hen [Ms. Lomax] spoke, she gave damning testimony that discredited [Defendant's] program, rebutted almost the entirety of

---

[18]   Because the addendum will not be added to the administrative record, the Court also will not allow Dr. Hurewitz to testify in open court as to its contents.

Ms. Ryan's[19] testimony, and will prove useful in adjudicating, and possibly resolving, the parties' dispute."  (Id.)  Plaintiffs therefore ask the Court to supplement the record with her testimony since it "reveals how [Defendant] placed the weight of responsibility for J.O.'s education on someone who lacked the training and skill to play that role."  (Id. at 23.)

Defendant conversely argues that "supplementing the record with Lomax's deposition transcript would simply allow the introduction of cumulative evidence that merely echoes other testimonial and documentary evidence that Plaintiffs introduced into the already-voluminous record during the due process proceeding."  (Doc. No. 31 at 14-15.)  "[T]hough Plaintiffs ultimately chose not to call her as a witness in the due process proceeding," Defendant states that "they discussed Lomax's role in J.O.'s education at great length."  (Id. at 15.)  "Even a cursory review of the transcripts from the due process proceeding reveals that by her name or her job title, Lomax was referenced at least 122 times across the eight days of testimony. . . . from eight separate witnesses[.]"[20]  (Id.) (emphasis omitted).  Moreover, Defendant notes that Plaintiffs "identified [Ms. Lomax] as one of their anticipated witnesses in their 5-day disclosure notice from the due

---

[19]   As noted earlier, Ms. Christine Ryan was J.O.'s assigned special education teacher at Vare-Washington elementary school.  (See Doc. No. 30 at 22.)

[20]   The witnesses Defendant references are as follows:

>   Plaintiff Bridget M.; Christine Ryan, J.O.'s special education teacher; Jamie Devlin, [Defendant's] Board Certified Behavior Analyst ("BCBA") who was a member of J.O.'s IEP Team; Meredith Buse, J.O.'s regular education teacher for the first half of the 2018-2019 school year; Jacqueline Turner, J.O.'s regular education teacher for the second half of the 2018-2019 school year; Director of Special Education Marie Capitolo; Jessica Dean, the BCBA who completed an independent evaluation of J.O. at Plaintiffs' request and accordingly observed him in his District education program; and Hurewitz, who observed J.O.'s interactions with Lomax at Plaintiffs' request.

(Doc. No. 31 at 15) (footnote omitted).

process proceeding" and "could have easily called Lomax as a witness," but ultimately "determined not to."  (<u>Id.</u>)  In Defendant's view, "Plaintiffs' explanation for why they decided not to call Lomax as a witness is not credible."  (<u>Id.</u> at 20.)

While Ms. Lomax's deposition testimony provides a relevant, first-hand perspective into the reality of J.O.'s IEP implementation at Vare-Washington elementary school, the Court agrees with Defendant that her testimony is largely cumulative of evidence introduced at the Due Process Hearing.  Contrary to Plaintiffs' assertion in their Motion, notable parts of Ms. Lomax's deposition testimony corroborate—rather than contradict—Ms. Ryan's testimony at the Hearing.[21]

---

[21]  The key part of Ms. Lomax's deposition testimony that contradicts Ms. Ryan's testimony, which Plaintiffs rely upon in the instant Motion (<u>see</u> Doc. No. 30 at 21-23), was elicited at the Due Process Hearing through Dr. Hurewitz's testimony.  In her deposition, Ms. Lomax testified that Ms. Ryan was not as involved with J.O. as Ms. Ryan claimed to be.  (<u>See</u> Doc. No. 30-1, Ex. A at 28:22-29:4.)  But at the Hearing, Dr. Hurewitz testified as follows:

[DEFENSE COUNSEL]:  So, you're saying that it's possible that your presence could have impacted not only on [J.O.'s] performance, but the performance of Ms. Lomax and Ms. Ryan?

[DR. HUREWITZ]:  Well, to give you an example, <u>Ms. Lomax told me during the observation that Ms. Ryan is usually not as hands on with [J.O.] and isn't there as long</u>, but she was doing something different that day.  And Brianna hypothesized that that was because I was present.

(Doc. No. 13, Ex. 6 at 1557:3-13) (emphasis added).

For example, Ms. Lomax and Ms. Ryan both stated that Ms. Lomax was responsible for monitoring J.O.'s behavior[22] and filling out roughly 8 data collection sheets,[23] while Ms. Ryan was responsible for monitoring her work,[24] monitoring J.O.'s IEP progress,[25] and administering probes to J.O.[26]  Ms. Lomax was tasked with a lot of work regarding J.O.,[27] and while she was not sure of the exact nature of her role regarding IEP implementation, she worked extensively with J.O. because she cared about him.[28]

Key aspects of Ms. Lomax's deposition testimony also corroborate other witnesses' testimony at the Hearing.  Dr. Hurewitz stated that she too observed Ms. Lomax filling out several data collection sheets.[29]  Jamie Devlin, Board Certified Behavior Analyst ("BCBA") and member of J.O.'s IEP team, testified that Ms. Lomax worked on academic tasks for J.O. in addition to behavioral tasks.[30]  Jacqueline Turner, one of J.O.'s first grade teachers at Vare-Washington,

---

[22]  Compare (Doc. No. 13, Ex. 13 at 225:12-23, 238:15-16), with (Doc. No. 30-1, Ex. A at 42:15-24, 80:12-19).

When specifically asked about certain documents, Ms. Lomax and Ms. Ryan both testified that Ms. Lomax filled out a majority of each document.  (See Doc. Nos. 13, Ex. 13 at 237:23-238:5, 238:17-239:1, at 241:13-23, 261:14-23, 262:11-17; 13, Ex. 12 at 7:13-23; 30-1, Ex. A at 81:6-15, 82:24-83:1-22, 88:23-89:8, 92:12-14, 95:17-19, 98:12-20.)

[23]  Compare (Doc. No. 13, Ex. 12 at 9:6-10), with (Doc. No. 30-1, Ex. A at 100:22-101:6).

[24]  Compare (Doc. No. 13, Ex. 12 at 79:6-15), with (Doc. No. 30-1, Ex. A at 58:8-10, 107:21-23).

[25]  Compare (Doc. No. 13, Ex. 13 at 224:15-25), with (Doc. No. 30-1, Ex. A at 176:9-11).

[26]  Compare (Doc. No. 13, Ex. 12 at 105:21-22), with (Doc. No. 30-1, Ex. A at 143:15-20).

[27]  Compare (Doc. No. 13, Ex. 12 at 79:6-24), with (Doc. No. 30-1, Ex. A at 101:3-9).

[28]  Compare (Doc. No. 13, Ex. 12 at 80:1-14), with (Doc. No. 30-1, Ex. A at 14:4-10, 55:1-4).

[29]  (See Doc. No. 13, Ex. 6 at 1498:1-11.)

[30]  Compare (Doc. No. 13, Ex. 11 at 508:9-12), with (Doc. No. 30-1, Ex. A at 28:6-16).

testified that Ms. Lomax worked on sight word exercises with J.O.[31]  BCBA Jessica Dean testified

that Ms. Lomax seemed to be the primary person to provide instruction to J.O.[32] even though she

was not properly trained to do so,[33] and that Ms. Lomax should have been part of J.O.'s IEP team.[34]

And in their closing brief, Plaintiffs compiled the above testimony from the Hearing to

argue that J.O. was denied a FAPE because, inter alia, his education primarily fell into the hands

of his unqualified and untrained aide, Ms. Lomax.[35]

Based on the above review, it is evident that Ms. Lomax's testimony is cumulative "since

it covers what was what already considered at the due process hearing . . . ."  R.G. ex rel. Maria

---

[31]  Compare (Doc. No. 13, Ex. 10 at 749:1-16), with (Doc. No. 30-1, Ex. A at 29:5-11, 19-21).

[32]  Compare (Doc. No. 13, Ex. 7 at 1248:5-9), with (Doc. No. 30-1, Ex. A at 30:9-11).

[33]  Compare (Doc. No. 13, Ex. 7 at 1257:11-1258:11), with (Doc. No. 30-1, Ex. A at 62:6-8, 156:9-21).

[34]  Compare (Doc. No. 13, Ex. 7 at 1263:8-15), with (Doc. No. 30-1, Ex. A at 52:4-10).

[35]  The following excerpts are in Plaintiffs' closing brief:

[J.O.] had to rely on an aide for support.  The aide was also responsible for collecting his behavioral data.  The aide had no college degree or teacher certifications. . . . [J.O.'s] IEP afforded the aide little help. . . . [Defendant] also failed to train [J.O.'s] teachers and aide on how to implement the behavior plan.

. . . .

[Ms. Ryan] testified that the aide's role was to provide behavioral support. . . . However, [Defendant's] BCBA clearly identified the aide as integral to addressing [J.O.'s] academic deficits.

. . . .

[Defendant's] primary approach of placing [J.O.] in large regular education classrooms and delegating primary responsibility for educating him to an untrained aide rendered the program inappropriate.

(Doc. No. 13, Ex. 4 at 5-6, 16-17, 21) (footnotes omitted).

G. v. Downingtown Area Sch. Dist., 528 F. App'x 153, 156 (3d Cir. 2013).  The pertinent details of her testimony became part of the administrative record when the witnesses noted previously testified at the Hearing.  See Jaffess, 2006 WL 3097939, at *4.  Therefore, Plaintiffs' Motion to Supplement the Administrative Record will be denied as to the deposition transcript of Ms. Lomax.

V.      **CONCLUSION**

Because Plaintiffs' proffered evidence is cumulative to evidence contained in the 6,230-page administrative record, it would not be useful to this Court's decision on whether J.O. was denied a FAPE.  Accordingly, Plaintiffs' Motion to Supplement the Administrative Record (Doc. No. 30) will be denied.  An appropriate Order follows.